# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES EX REL. JOHN DOE,

*Plaintiff-Appellant*,

*v.*

STAPLES, INC.; OFFICEMAX, INC.; TARGET CORP.;
AND INDUSTRIES FOR THE BLIND, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Columbia, No. 08-846,
Before the Honorable Judge Richard J. Leon

## BRIEF FOR APPELLEES

STEVE Y. KOH
JOHN F. HENAULT, JR.
PAUL GRAVES
PERKINS COIE LLP
700 13th Street N.W.
   Suite 600
Washington, D.C.  20005
(202) 654-6200
*Counsel for OfficeMax, Incorporated*

DAVID W. OGDEN
DANIEL S. VOLCHOK
D. BRADFORD HARDIN, JR.
GIDEON M. HART
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20036
(202) 663-6000
*Counsel for Staples, Inc.*

ROBERT P. FLETCHER
LESLIE PAUL MACHADO
LECLAIR RYAN
1101 Connecticut Avenue N.W.
   Suite 600
Washington, D.C.  20036
(202) 659-4140
*Counsel for Industries for the Blind, Inc.*

JAMES L. VOLLING
MATTHEW B. KILBY
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
(612) 766-7700
*Counsel for Target Corp.*

October 28, 2013                    **Oral Argument Not Yet Scheduled**

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A) Parties and amici.** Plaintiff-appellant John Doe appeared in the district court and is a party in this Court.

Defendants-appellees Staples, Inc.; OfficeMax, Inc.; Target Corp.; and Industries for the Blind, Inc. appeared in the district court and are parties in this Court.

The United States did not intervene in the action below. *See* J.A. 25-28. Nor did any other entity. There were also no amici in the district court, and there are presently no intervenors or amici in this Court.

**(B) Rulings Under Review.** Plaintiff's April 22, 2013, notice of appeal (J.A. 198-199) states that he is appealing the March 25, 2013, order of the district court (Hon. Richard J. Leon) granting defendants' motions to dismiss the first amended complaint and dismissing that complaint with prejudice. *See* J.A. 196-197. The memorandum opinion accompanying that order (J.A. 184-195) is available at 932 F. Supp. 2d 34.

**(C) Related Cases.** This case has not previously been before this Court and defendants are not aware of any related cases before this or any other Court.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

## CORPORATE DISCLOSURE STATEMENTS

Staples, Inc. has no parent corporation and no publicly-held company has a 10 percent or greater ownership interest in Staples. *See* Cir. R. 26.1(a). Staples is the world's largest office products company and second largest internet retailer. *See* Cir. R. 26.1(b).

OfficeMax Incorporated is a Delaware corporation with its principal place of business in Illinois. Its shares are traded on the New York Stock Exchange and it has no parent corporation. To the best of OfficeMax's knowledge, no individual or publicly held corporation owns 10% or more of OfficeMax Incorporated's common stock, with the exception of the following: BlackRock, Inc., on behalf of itself and the following wholly owned subsidiaries: (i) BlackRock Advisors, LLC, (ii) BlackRock Capital Management, Inc., (iii) BlackRock Investment Management, LLC, (iv) BlackRock (Luxembourg) S.A., (v) BlackRock Asset Management Australia Limited, (vi) BlackRock Asset Management Canada Limited, (vii) BlackRock Asset Management Ireland Limited, (viii) BlackRock Advisors (UK) Limited, (ix) BlackRock Fund Advisors, (x) Blackrock International Limited, (xi) BlackRock Institutional Trust Company, N.A., and (xii) BlackRock Investment Management Limited, have declared that they, collectively, are the beneficial owner of 10% or more of OfficeMax Incorporated's common stock.

OfficeMax provides office supplies and paper, print and document services, technology products and solutions, and furniture to businesses and consumers.

Target Corporation is not the subsidiary of any parent company, and no publicly held companies own 10 percent or more of its stock.  Target Corporation is the second largest general merchandise retailer in the United States.

Industries for the Blind, Inc. (IFB) is a not-for-profit corporation that has no parent company and no publicly held corporations own any stock in IFB.  IFB enhances employment opportunities for legally blind people by providing products and services to the federal government and private companies.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ...................................................................................................i

CORPORATE DISCLOSURE STATEMENTS ...................................................... ii

TABLE OF AUTHORITIES ...........................................................................vi

GLOSSARY ............................................................................................. xii

INTRODUCTION ........................................................................................1

ISSUES PRESENTED ...................................................................................3

STATUTORY PROVISIONS ...........................................................................4

STATEMENT OF FACTS ...............................................................................4

    A.    Relator's Allegations .................................................................4

    B.    Procedural History ....................................................................9

SUMMARY OF ARGUMENT ........................................................................10

ARGUMENT ............................................................................................14

I.    THE PUBLIC-DISCLOSURE BAR FORECLOSES RELATOR'S CLAIMS ..................14

    A.    Introduction ...........................................................................14

    B.    As Relator Concedes, The Allegedly Misrepresented
        Facts Were Publicly Disclosed ...................................................15

    C.    The Allegedly True Facts Were Also Publicly Disclosed .................16

        1.    The alleged characteristics of Chinese-origin
            pencils were identified in administrative reports ....................17

        2.    The pencils' characteristics were disclosed in
            newspaper advertisements, on websites, and on
            store shelves ..............................................................24

    D.    The Original-Source Exception Cannot Help Relator .......................27

1.    Relator has waived the argument that he is an original source.............................................................27

2.    The record does not establish that relator is an original source.............................................................29

II.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF .................................................................................33

A.    Relator Fails To Plausibly Allege That Defendants Had The Requisite Scienter .........................................34

B.    The Complaint Does Not Allege Facts That Plausibly Support The Conclusion That Defendants' Pencils Were Manufactured In China...........................................39

III.    THE COMPLAINT DOES NOT PLEAD FRAUD WITH PARTICULARITY ...............................................................45

A.    The Complaint Fails To Specify The Contents Of The Allegedly False Statements ...............................46

B.    The Complaint Does Not Specify Who Made The Allegedly False Statements Or Otherwise Engaged In The Alleged Fraud.................................................47

C.    The Complaint Fails To Specify When, Where, Or How The Allegedly False Statements Were Made ......................48

IV.    COUNTS II AND IV ARE NOT VIABLE FOR ADDITIONAL REASONS.................49

A.    Count II Fails To State A Claim.........................................49

B.    Count IV Fails To State A Claim.......................................50

V.    DISMISSAL ON ANY ALTERNATE GROUND SHOULD BE WITH PREJUDICE ...............................................................52

CONCLUSION .................................................................53

CERTIFICATES OF COMPLIANCE AND SERVICE

# TABLE OF AUTHORITIES*

## CASES

Page

*American Textile Manufacturers Institute v. The Limited, Inc.,*
190 F.3d 729 (6th Cir. 1999) ........................................................... 50

*Amgen, Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004) ................................................ 33

*Araya v. Bayly*, 875 F. Supp. 2d 1 (D.D.C. 2012) ..................................................... 15

\*   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................. 40, 41, 42, 44, 45

*Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) ........................... 53

\*   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ................................. 40, 41, 43

*Boone v. MountainMade Foundation*, 684 F. Supp. 2d 1
(D.D.C. 2010) ........................................................................................ 46

*Butera & Andrews v. IBM Corp.,* 456 F. Supp. 2d 104 (D.D.C. 2006) .................. 51

*Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047
(9th Cir. 2011) ...................................................................................... 47

*Confederate Memorial Association v. Hines*, 995 F.2d 295
(D.C. Cir. 1993) ................................................................................... 28

*Dingle v. Bioport Corp.*, 388 F.3d 209 (6th Cir. 2004) ........................................... 26

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................... 53

*Graham County Soil & Water Conservation District v. United States
ex rel. Wilson*, 559 U.S. 280 (2010) ........................................................ 4, 14

*Herbert v. National Academy of Sciences*, 974 F.2d 192
(D.C. Cir. 1992) ................................................................................... 15

*Hoyte v. American National Red Cross*, 518 F.3d 61 (D.C. Cir. 2008) .................. 50

---

\*      Authorities chiefly relied upon are marked with an asterisk.

- vi -

*Jones v. Bernanke*, 557 F.3d 670 (D.C. Cir. 2009)....................................................33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................15

*Murthy v. Vilsack*, 609 F.3d 460 (D.C. Cir. 2010) ..................................................28

\* *RSM Production Corp. v. Freshfields Bruckhaus Deringer US LLP*, 682 F.3d 1043 (D.C. Cir. 2012)..............................................................40, 42

*Rockwell International Corp. v. United States*, 549 U.S. 457 (2007) ..............14, 23

*Saba v. Compagnie Nationale Air France*, 78 F.3d 664 (D.C. Cir. 1996) ........................................................................................................35

\* *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885 (2011) ..............................................................................................16, 18, 25

*Stern v. Leucadia National Corp.*, 844 F.2d 997 (2d Cir. 1988)...........................46

*Target Sportsware, Inc. v. United States*, 875 F. Supp. 835 (Ct. Int'l Trade)........................................................................................................37

*United States ex rel. Alcohol Foundation v. Kalmanovitz Charitable Foundation*, 186 F. Supp. 2d 458 (S.D.N.Y. 2002) ......................................16

*United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292 (D.D.C. 1996) ........................................................................................32

*United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007) ......................................................................15

*United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648 (5th Cir. 2004) ........................................................................................50

*United States ex rel. Baltazar v. Warden*, 635 F.3d 866 (7th Cir. 2011) ...............22

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28 (D.D.C. 2003)...............................................................45

*United States ex rel. Clausen v. Laboratory Corp.*, 290 F.3d 1301 (11th Cir. 2002) ......................................................................................46

*United States ex rel. Colquitt v. Abbott Laboratories*, 864 F. Supp. 2d 499 (N.D. Tex. 2012)......................................................................24

*United States ex rel. Cooper & Associates v. Bernard Hodes Group, Inc.,* 422 F. Supp. 2d 225 (D.D.C. 2006) ......................................20

*United States ex rel. Davis v. District of Columbia*, 591 F. Supp. 2d 30 (D.D.C. 2008) ...............................................................................47

*United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012) .................................................................19, 23

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services, Inc.*, 778 F. Supp. 2d 37 (D.D.C. 2011) ........................49

*United States ex rel. Ervin & Associates, Inc. v. Hamilton Securities Group, Inc.*, 298 F. Supp. 2d 91 (D.D.C. 2004)............................38

*United States ex rel. Estate of Cunningham v. Millennium Laboratories of California*, 713 F.3d 662 (1st Cir. 2013)...........................31

\* *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir.1997)................................................14, 19, 21, 22, 31

*United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538 (10th Cir. 1996) .................................................................22, 31

\* *United States ex rel. Folliard v. Hewlett-Packard Co.*, 272 F.R.D. 31 (D.D.C. 2011) .................................................44, 45, 47, 49, 52

*United States ex rel. Green v. Service Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20 (D.D.C. 2012)............................25

*United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156 (10th Cir. 1999) ..................................................29

*United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 (D.C. Cir. 1981) .......................................................................................48

*United States ex rel. Kinney v. Stoltz*, 327 F.3d 671 (8th Cir. 2003)......................31

*United States ex rel. McLain v. Fluor Enterprises, Inc.*, No. 06-11229, 2013 WL 4721367 (E.D. La. Sept. 3, 2013)....................................................52

*United States ex rel. Ondis v. City of Woonsocket*, 582 F. Supp. 2d 212 (D.R.I. 2008).........................................................................................24

*United States ex rel. Osheroff v. Humana, Inc.*, No. 10-cv-24486, 2012 WL 4479072 (S.D. Fla. Sept. 28, 2012).................................................24

*United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313 (D. Mass. 2009) .......................................................................................................30

*United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548 (10th Cir. 1992) ...............................................................................17

\* *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913 (D.C. Cir. 1999) .................................................................17, 18, 19, 28, 29

\* *United States ex rel. Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994)................................14, 15, 20, 23, 26

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997) .......................................................................46

*United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542 (D.C. Cir. 2002) ...........................................................................................45

\* *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004).......................................28, 46, 47, 48, 51

*United States v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997) ...........................................39

*United States v. Q International Courier, Inc.*, 131 F.3d 770 (8th Cir. 1997) .......................................................................................................50

\* *United States v. Science Applications International Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) ..................................................................34, 35

*Walpin v. Corp. for National & Community Services*, 630 F.3d 184 (D.C. Cir. 2011) ...........................................................................................28

*Willoughby v. Potomac Electric Power Co.*, 100 F.3d 999 (D.C. Cir. 1996) ............................................................................................52

## STATUTES, RULES, AND REGULATIONS

19 U.S.C.
§ 1304 (2008)........................................................................49
§ 1592 ...................................................................................34

31 U.S.C.
§ 3729 ...............................................................................5, 34
§ 3730 ....................................... 4, 9, 10, 11, 12, 14, 16, 27, 31

Miscellaneous Trade and Technical Corrections Act,
Pub. L. No. 106-36, 113 Stat. 127 (1999) ......................................50

Patient Protection and Affordable Care Act,
Pub. L. No. 111-148, 124 Stat. 119 (2009) .....................................4

Federal Rules of Civil Procedure
Rule 8.................................................................................12, 41, 43
Rule 9.................................................................12, 13, 45, 47, 49

19 C.F.R.
§ 4.7 ....................................................................................7, 16
§ 103.31 ...............................................................................7, 16

## OTHER AUTHORITIES

About the USITC, *available at* www.usitc.gov/press_room/about_usitc.htm (last visited Oct. 28, 2013).............................................7

http://www.officemax.com/office-supplies/pens-pencils-markers/pencils/wood-pencils?position=1&prodPage=91 (last visited Oct. 28, 2013) .......................................................................9

http://www.target.com/p/12ct-usa-gold-wood-pencils/-/A-11289676 #prodSlot=medium_1_1 (last visited Oct. 28, 2013) ......................9

https://www.ibexp.com/item/list/catalog/Base+Supply/group/tools-mro/category/marking-tools/subcategory/pencils (last visited Oct. 28, 2013) .......................................................................9

ITC Pub. 2816, *Certain Cased Pencils from Thailand*, Investigation
No. 731-TA-670 (Final) (1994)................................................................7, 18

ITC Pub. 3820, *Cased Pencils from China*, Investigation No. 731-TA-
669 (Second Review) (2005)........................................................7, 18, 19, 20

U.S. Customs and Border Protection, CBP Form 7501 Instructions,
*available at* http://forms.cbp.gov/pdf/7501_instructions.pdf
(last visited Oct. 28, 2013)................................................................47

# GLOSSARY

CBP      U.S. Customs and Border Protection

FCA      False Claims Act

ITC      International Trade Commission

## INTRODUCTION

In this False Claims Act (FCA) case, plaintiff "John Doe" (referred to herein as "relator") alleges that defendants, three office-supply retailers and a non-profit entity, bought pencils that they knew were made in China but represented to the government were made elsewhere in Asia—the alleged purpose being to avoid anti-dumping and other import duties.  After investigating these allegations, the government declined to intervene in the district court.

According to the operative complaint, "Chinese pencils are readily identified by their overall appearance," such that no "direct contact with the factories actually producing the pencils" is necessary to discern their country of origin.  J.A. 41 (¶¶ 19, 20).  This allegation is essential to relator's case because it supplies a basis for two key claims:  that the pencils defendants imported were in fact Chinese-made—nothing in the complaint suggests Chinese origin *other* than the pencils' characteristics—and that defendants acted knowingly (because the characteristics of the pencils gave away their true country of origin) in misrepresenting that the pencils were made in other countries.

The district court correctly dismissed the complaint, because the physical characteristics that the complaint says allow a person to visually identify Chinese pencils as such were publicly disclosed within the meaning of the FCA:  They were described in government reports—reports that also linked defendants, by

name or description, with the importation of pencils from China.  And pictures of defendants' pencils showing their characteristics are found in print media and on websites.  Relator, meanwhile, "did not attempt to argue [below] that he was an original source on which the allegations were based."  Appellant's Br. 5.  He attempts to do so for the first time on appeal, but that obviously comes too late.  In any event, his arguments confirm that his knowledge was gained from third parties and hence is *not* direct and independent, as the statute requires for original-source status.  The district court thus properly concluded that the FCA's public-disclosure bar deprived it of subject matter jurisdiction, and it dismissed the complaint.

Seeking to avoid that bar, relator tries repeatedly (but improperly) to walk away from his complaint.  He claims, for example (Br. 12), that Chinese-origin pencils cannot be identified through a visual examination alone because, he now contends, some pencils produced *outside* China may have the same characteristics.  Thus, relator now argues (Br. 7), it was necessary to investigate the suppliers' factories to determine if they have the capacity to make all the pencils they sell.  If they do not, relator's inference is that those suppliers procured some or all of their pencils from China.  These new allegations do not suffice to avoid the public-disclosure bar, and come too late in any event.

The new allegations do, however, confirm a separate flaw in relator's case that defendants identified below:  The complaint fails to state a plausible claim for

relief. If pencils produced outside of China *can* look like those made in China, the complaint's allegations of Chinese origin are equally consistent with a theory of defendants' innocence (and hence they do not state a plausible claim for relief).

Nor does the complaint plausibly allege scienter. Relator claims not that defendants actually knew the pencils were made in China, but rather that they *should have known*—from looking at the pencils. That allegation was always insufficient, and relator now confirms this in his efforts to abandon his complaint. If, as he now concedes, (1) the pencils' appearance is consistent with the non-Chinese origins that defendants allegedly represented to the government and (2) the true country of origin could not be known without sending investigators to suppliers' factories in Asia, then there is no plausible basis to infer that defendants should have known (much less were "reckless" in not knowing) the pencils' true origin.

Without plausible allegations of falsity or scienter, the complaint fails to state a claim. The district court's dismissal can be affirmed on that alternate basis.

## ISSUES PRESENTED

1a.    Whether relator's allegations were publicly disclosed for FCA purposes prior to the filing of his complaint.

1b.    If so, whether relator proved that he is an original source of the information underlying his allegations.

2.       Alternatively, whether the operative complaint both states a plausible claim for relief and alleges fraud with the requisite particularity.

3.       Also alternatively, whether Counts II and IV of the operative complaint are legally insufficient for additional reasons.

## STATUTORY PROVISIONS

The applicable version of the FCA's public-disclosure bar provides that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2008).[1]

## STATEMENT OF FACTS

### A.    Relator's Allegations

1.       Relator filed this FCA case under the pseudonym "John Doe" in 2008. *See* J.A. 1.  In 2012, he filed an amended complaint (hereinafter referred to as the complaint).  *See* J.A. 34-61.  On April 2, 2012, the United States informed the district court that it was not intervening.  *See* J.A. 25-28.  The court thereafter

---

[1]       After this case was filed, Congress amended the public-disclosure bar.  *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119 (2009).  Because the amendments do not apply to cases then pending, *see Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010), this brief discusses and cites to the FCA as it existed when the case was filed in 2008.  *See* Appellant's Br. 3-4 n.1 (doing likewise).

- 4 -

dismissed the complaint, concluding that relator's claims were foreclosed by the FCA's public-disclosure bar.

Relator's claims rest on the so-called "reverse-false-claims" provision of the FCA. That provision imposes civil liability on anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). The complaint contains four counts against each defendant. Each count is predicated on the allegation that defendants bought pencils they knew to have been made in China and then falsely represented to the government that the pencils were made outside China, thereby avoiding having to pay to the United States money that would have been due, under various regulations, for Chinese pencils.

More specifically, Count I is based on anti-dumping duties applicable to Chinese pencils. *See* J.A. 38, 59 (¶¶ 11, 57). Count II is based on a regulation levying penalties of ten percent on importers who incorrectly mark their imports' country of origin. *See* J.A. 39, 59 (¶¶ 15, 59). Count III—which relator voluntary dismissed below, *see* J.A. 186—was based on regulations obligating importers to obtain bonds, which in turn provide the possibility of liquidated damages for non-compliance with government regulations. *See* J.A. 39, 60 (¶¶ 15, 61). Count IV is

based on regulations allowing importers to avoid regular duties for "pencils that

originate in countries such as Indonesia or Thailand." *See* J.A. 40, 60 (¶¶ 16, 63).

The complaint alleges that Chinese-made pencils can be "readily identified"

as such based on visual inspection alone:

> Due to the differences in … the physical characteristics of Chinese-
> made pencils and pencils made in the rest of the world, experienced
> pencil buyers working for Defendants are put on notice of the true
> country of origin of the pencils they purchase in third countries
> without the need for direct contact with the factories actually
> producing the pencils.
>
> Chinese pencils can be readily identified by their overall appearance
> and quality that [are] a result of the unique manufacturing process
> used in China.

J.A. 41 (¶¶ 19-20).  As relator further elaborated in the district court, a "simple

visual examination of the product would show certain well known unique features

common to pencils manufactured in China, and distinct from pencils manufactured

elsewhere." Dkt. 64 at 14.[2]

The complaint also states that shippers and importers of goods provide

certain information about imports—including country-of-origin information—to

U.S. Customs and Border Protection (CBP).  *See* J.A. 43-44 (¶¶ 22-23).  Relator

obtained the information submitted by the shippers (in their shipping manifests)

from a service called PIERS Global Intelligence Solutions.  J.A. 43 (¶ 22).

---

[2]     All docket entries cited herein pertain to the district court's docket for this
case, No. 1:08-cv-0846 (D.D.C.).

PIERS—a "comprehensive, validated, and standardized source of U.S. waterborne import and export trade data," www.piers.com (last visited Oct. 28, 2013)—obtains this manifest information from the shippers' filings with CBP, filings required by 19 C.F.R. § 4.7.[3]

Relator's complaint lists each shipment of pencils at issue, alleging as to each one that "[b]ased on their physical characteristics, these pencils were produced in China."  J.A. 46, 55-56 (¶¶ 32, 46, 49, 52).

2.    The government has long been on notice of the characteristics of Chinese-manufactured pencils on which the complaint relies.  In 1994 and again in 2005, the International Trade Commission (ITC) published reports about such characteristics.  *See* ITC Pub. 2816, *Certain Cased Pencils from Thailand*, Investigation No. 731-TA-670 (Final) (1994); ITC Pub. 3820, *Cased Pencils from China*, Investigation No. 731-TA-669 (Second Review) (2005) (hereinafter 2005 ITC Report).  The ITC is "an independent, quasi-judicial Federal agency with broad investigative responsibilities on matters of trade" that "investigates the effects of dumped and subsidized imports."  About the USITC, *available at* www.usitc.gov/press_room/about_usitc.htm (last visited Oct. 28, 2013).

---

[3]    Vessel manifests are available for examination and copying by news media. *See* 19 C.F.R. § 103.31(a)(3).  PIERS qualifies because it is a service of the Journal of Commerce newspaper.

Relator's complaint offers only slight variations on what the ITC had publicly reported. For example, with respect to relator's allegation that Chinese-made pencils often have "off-center" leads made to "low quality standards," J.A. 42 (¶ 20), the ITC reports state:

- Chinese-made pencils possess inferior "centering of lead," J.A. 166;

- They "had leads that would break easily," J.A. 165; and

- They "use lower quality graphite," J.A. 216.

The ITC reports similarly speak to relator's allegation that Chinese-made pencils' "erasers and ferrules are of the lowest quality and often poorly affixed to the pencil." J.A. 42 (¶ 20). (A ferrule is the crimped metal that connects an eraser with a pencil.) Specifically, the ITC reports state:

- Chinese pencils "were made from lower quality, less expensive … eraser[s], ferrules, and cores," J.A. 204;

- They "did not … erase well" and had "loose ferrules and erasers." J.A. 165; and

- They had inferior "attachment of ferrule and eraser" in comparison to U.S. made pencils, J.A. 166.

Finally, regarding relator's allegation that Chinese pencils "usually have poor quality paint and paint application," and that the Chinese method of air drying "results in a light, natural color slat and pencil," J.A. 41-42 (¶ 20), the ITC reports state:

- Low-end Chinese pencils "use the original color of the wood with no lacquer or use low-end paint," J.A. 216; and

- They have inferior "finish [and] paint covering," J.A. 166.

While the ITC reports thus describe most of the characteristics listed in the complaint, the pencils' physical characteristics were also on display in defendants' newspaper advertisements, their websites, and the shelves of hundreds of their stores across the country. *See, e.g.*, J.A. 135-140.[4]

The ITC reports also specifically linked defendants—by name or description—with the importation of pencils from China. *See* J.A. 204 n.27, 208 & n.40.

## B.    Procedural History

Relator filed this lawsuit in 2008. As the FCA requires, the complaint remained under seal while the Justice Department investigated the allegations. *See* 31 U.S.C. § 3730(b)(2). The investigation lasted four years, during which time relator coordinated his efforts with the government and received documents, including ones that defendants had provided to the government. *See* Dkt. 46 at 5. The United States elected not to intervene in the district court, *see* J.A. 25, and the case was unsealed, *see* J.A. 32-33.

---

[4]    *See also* http://www.target.com/p/12ct-usa-gold-wood-pencils/-/A-11289676#prodSlot=medium_1_1; http://www.officemax.com/office-supplies/pens-pencils-markers/pencils/wood-pencils?position=1&prodPage=91 (last visited Oct. 28, 2013); https://www.ibexp.com/item/list/catalog/Base+Supply/group/tools-mro/category/marking-tools/subcategory/pencils (last visited Oct. 28, 2013).

Defendants moved to dismiss the complaint on several grounds, including the public-disclosure bar.  This bar divests courts of jurisdiction over FCA lawsuits that are based upon publicly-disclosed information, unless the relator is an original source of the information.  *See* 31 U.S.C. § 3730(e)(4)(A), *quoted supra* p. 4. Relator denied that his claims are based on publicly disclosed information, but did not attempt to prove in the alternative that he is an original source of the information—because (he says) he had a "firm conviction" that he would prevail on the core public-disclosure point.  Appellant's Br. 32.

The district court concluded, however, that "relator's claims are based on publicly disclosed information, of which the relator is not the original source," and therefore dismissed the complaint.  J.A. 184-185.  It did not reach defendants' other arguments for dismissal, including that the complaint fails to state a plausible claim for relief and also fails to plead fraud with particularity.

## SUMMARY OF ARGUMENT

I.     The district court properly concluded that relator's allegations were publicly disclosed prior to the filing of the original complaint, and thus that the FCA deprived it of subject matter jurisdiction over the case.  The court correctly identified the essential elements of relator's claims as:  (1) allegations that shipping manifests accompanying the importation of the pencils at issue indicated countries of origin other than China, and (2) allegations that (as the complaint avers six

- 10 -

times) "[b]ased on their physical characteristics, these pencils were produced in China."  Both of these elements had been previously disclosed publicly.

The manifest information is summarized and published by PIERS Global Intelligence Solutions, a trade publication, which the relator does not contest is a public disclosure.

The characteristics of Chinese pencils were also publicly disclosed.  They were disclosed in two reports written by the ITC—reports that expressly linked defendants, by name or description, with the importation of pencils from China— as well as in print media, on defendants' websites, and on store shelves.  Relator seeks to distinguish these public sources on the ground that his allegations contain additional different details.  This argument fails because under this Court's precedent, the public-disclosure bar applies so long as the "essential elements" of the alleged fraud are "substantially similar" to information already in the public domain.  That standard is met here.  Relator's remaining arguments that the ITC reports and other sources do not constitute a public disclosure are unavailing.

Given the public disclosures, the district court lacked subject-matter jurisdiction over this case unless relator could demonstrate that he is an "original source" of the relevant information.  31 U.S.C. § 3730(e)(4)(A).  An original source is one who "has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided that information to

the government before filing an action." *Id.* § 3730(e)(4)(B). Relator did not even attempt to show he is an original source in the district court and thus his arguments on the point should not be considered on appeal. In any event, relator does not plausibly allege that he is an original source. To the contrary, the facts he alleges show that he obtained his knowledge second-hand, not directly and independently.

II.     Even if the Court has jurisdiction to hear this case, the dismissal should be affirmed on one of the alternative grounds urged by defendants below. Among other things, the complaint was subject to dismissal because it fails to satisfy the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b). As to Rule 8, relator fails to plead sufficient facts to state a plausible claim for relief. Specifically, he does not plausibly allege that defendants "knowingly" concealed an obligation to the government, as the FCA requires. Relator fails to allege that any individual associated with defendants made any statement knowing it to be false. He instead relies on a "collective knowledge" theory that has been rejected by this Court. Second, in (impermissibly) abandoning his complaint on appeal and arguing—in an effort to avoid the public-disclosure bar—that the pencils' Chinese origin could *not* have been discerned from their characteristics, relator confirms the implausibility of his allegations that "experienced pencil buyers" employed by the defendants knew or should have known that the pencils were from China.

The complaint also fatally lacks allegations that plausibly support a conclusion that any statements on defendants' Customs forms were in fact false. In particular, relator has not plausibly alleged that the pencils in question were Chinese-made. He alleges that the pencils imported by defendants have qualities in common with certain Chinese pencils. But because he does not allege that those qualities are found *only* in Chinese pencils, his allegation is equally consistent with defendants' innocence, and thus insufficient.

III.    Dismissal of the complaint can also be affirmed on the ground that relator failed to plead fraud with particularity under Rule 9(b). Specifically, he failed to specify: (1) the contents of the allegedly false statements, instead relying upon shipping manifests stating the point of departure for *ships*, rather than the country of origin for the *cargo*; (2) the identity of the persons making the false statements and to whom the false statements were made; and (3) when, where, or how the allegedly false statements were made. Each of these failures is independently fatal to the complaint.

IV.    Two of the three remaining counts in the complaint (Counts II and IV) also fail to state a claim for additional reasons, and their dismissal could be affirmed on those bases.

V.    Finally, if the judgment below is affirmed on any of the alternate grounds, the dismissal should still be with prejudice. Relator's inability to draft a

viable complaint four years after filing the case shows that relator could not state

any viable claims going forward.  He should not be permitted to continue

burdening defendants and the courts with this litigation.

## ARGUMENT

### I.    THE PUBLIC-DISCLOSURE BAR FORECLOSES RELATOR'S CLAIMS

#### A.    Introduction

The FCA's public-disclosure bar attempts to strike the " 'golden mean

between adequate incentives for whistle-blowing insiders with genuinely valuable

information and discouragement of opportunistic plaintiffs who have no significant

information to contribute of their own.' "  *Graham Cnty.*, 559 U.S. at 294 (quoting

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C.

Cir. 1994)).  The bar is sometimes used to dispose of parasitic lawsuits copied

directly from public disclosures, but that "is not the FCA's only concern."  *United

States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 685 (D.C.

Cir.1997), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*,

549 U.S. 457, 470 (2007).  The statute is also concerned with avoiding the prospect

of the government paying a whistleblower's bounty for information that can be

found in public sources.  *Id.*

The public-disclosure bar is jurisdictional.  *See* 31 U.S.C. § 3730(e)(4)(A)

("No court shall have jurisdiction ....."); *Springfield Terminal*, 14 F.3d at 647.

Factual allegations therefore receive closer scrutiny than with respect to a Rule

12(b)(6) motion, *e.g.*, *Araya v. Bayly*, 875 F. Supp. 2d 1, 3 (D.D.C. 2012), and a

court may consider material beyond the pleadings, *Herbert v. Nat'l Acad. of Scis.*,

974 F.2d 192, 197 (D.C. Cir. 1992).  Relator bears the burden to establish

jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (party

invoking federal jurisdiction has the burden of establishing it); *United States ex rel.*

*Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514-515 (3d Cir. 2007) (district

court properly placed burden to prove jurisdiction on relator).

The public-disclosure bar is analyzed under the following formula:  "X [the

misrepresented facts] + Y [the true facts] = Z [the fraud]."  *Springfield Terminal*,

14 F.3d at 654.  When either Z or both X and Y are publicly disclosed, the courts

lack subject-matter jurisdiction.  *Id.*  Here, both X (the alleged misrepresentations

that the pencils were made outside China) and Y (the alleged truth that the pencils

were made in China) were publicly disclosed.

### B.     As Relator Concedes, The Allegedly Misrepresented Facts Were Publicly Disclosed

The allegedly misrepresented facts in this case (i.e., "X") are that the pencils

at issue were made outside China.  *See* Appellant's Br. 11.  Relator "does not

contest" the district court's holding (*see* J.A. 190-191) that these alleged mis-

representations were publicly disclosed in the PIERS data.  Appellant's Br. 10; *see*

*also id.* at 19 (stating that the question "does not need to be addressed").

Relator is right not to contest this point. The PIERS trade publication, which is the source for his claim that defendants misrepresented their pencils' country of origin, qualifies as "news media." *See United States ex rel. Alcohol Found. v. Kalmanovitz Charitable Found.*, 186 F. Supp. 2d 458, 463 (S.D.N.Y. 2002); *see also* J.A. 190 ("Courts broadly construe the channels of public disclosure specified in § 3730(e)(4)(A)." (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011))). It thus falls within the public-disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(A) (listing "news media" as a channel of public disclosure). Moreover, the shipping information underlying the PIERS reports is available to public subscribers "through the CBP Automated Manifest System." 19 C.F.R. §§ 4.7, 103.31(a). That information was thus disclosed in "administrative reports" under the FCA. *See Schindler Elevator,* 131 S. Ct. at 1891-1892 ("administrative … reports" are "governmental" sources that "give[] information").

## C.     The Allegedly True Facts Were Also Publicly Disclosed

The allegedly true facts in this case (i.e., "Y") are those from which relator draws his inference that the pencils at issue were made in China. *See* J.A. 38, 41-43, 46-49, 55-57 (¶¶ 12, 19-21, 32, 46, 52, 54). Those allegedly true facts were publicly disclosed.

The complaint's basis for alleging that the pencils are of Chinese origin is their physical appearance: "Chinese pencils can be readily identified by their

overall appearance and quality that [are] a result of the unique manufacturing process used in China," "without need for direct contact with the factories actually producing the pencils."  J.A. 41 (¶¶ 19, 20); *see also* Dkt. 64 at 14 (relator arguing below that a "simple visual examination" is sufficient to identify the "well known unique features common to pencils manufactured in China, and distinct from pencils manufactured elsewhere").  Indeed, the lynchpin in the complaint for each defendant's liability is the allegation that as to each pencil shipment, "[b]ased on their physical characteristics, these pencils were produced in China."  J.A. 46, 55-56 (¶¶ 32, 46, 49, 52).

The complaint's reliance on the pencils' alleged characteristics is fatal to relator's claims, because as the district court correctly observed, the characteristics that the complaint says make Chinese pencils "readily identifi[able]" were publicly disclosed in administrative reports, in print media, on websites, and on store shelves.  *See* J.A. 191-193.

### 1.     The alleged characteristics of Chinese-origin pencils were identified in administrative reports

This Court has held that an FCA claim is "based upon" public disclosures if the complaint "describ[es] allegations or transactions *substantially similar* to those in the public domain."  *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 918 (D.C. Cir. 1999) (emphasis added); *see also United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553 (10th Cir. 1992) ("[A]

plaintiff whose *qui tam* action is based *in any part* upon publicly disclosed allegations or transactions is subject to the 'original source' jurisdictional requirement." (emphasis added)).  Relator's allegations regarding the characteristics of Chinese-origin pencils are without question "substantially similar" to disclosures in the ITC reports, which are administrative reports within the meaning of the FCA.

As explained, the 1994 and 2005 ITC reports described in detail many of the characteristics of Chinese pencils that lie at the heart of the allegations in relator's complaint.  *See supra* pp. 7-9.  These include leads, erasers, ferrules, and paint. Reviewing relator's discussion of these characteristics leaves no doubt that the complaint "describ[es] allegations … substantially similar to those in the public domain," i.e., in the ITC reports.  *Settlemire*, 198 F.3d at 918.

Relator, however, advances four arguments for why the ITC reports are not public disclosures.  First, he asserts (Br. 24) that the reports are not administrative reports under the FCA because they contain no government findings, instead reciting survey responses from industry participants.  The Supreme Court has rejected that argument, holding that information in a FOIA response constituted a public disclosure—and reversing the Second Circuit's conclusion that government "reports" must contain the "synthesis of information in an investigatory context." *Schindler Elevator*, 131 S. Ct. at 1892.

Second, relator argues (Br. 25) that the reports are too old.  But the public-disclosure bar contains no time limit, and this Court has deemed reports older than the ITC reports to constitute a public disclosure.  *See Findley*, 105 F.3d at 679, 687 (forty-year-old government report, twenty-year-old legislative history, and ten-year-old court decision); *see also Settlemire*, 198 F.3d at 919 (discussing that in *Findley*, "disclosures going back as far as forty years prior to the relator's lawsuit were sufficient to disclose the practices which formed the basis of the relator's suit").  Relator complains (Br. 25) that he "certainly could not rely on" the report "to prove his case twelve years later."  Public disclosure, however, is not determined by usefulness in proving a relator's claim.  The pertinent question is whether the disclosure alerted the government to possible fraud.  *See Settlemire*, 198 F.3d at 919 (citing *Findley*, 105 F.3d at 687).  In any event, the complaint here asserts that the alleged fraud started for some defendants in 2003, well before issuance of the 2005 ITC Report.  *See* J.A. 44 (¶ 25).

Third, relator observes (Br. 26-28) that his complaint describes characteristics of Chinese-origin pencils beyond those mentioned in the ITC reports.  But the fact that a relator "provide[s] more specific details … does not matter."  *Settlemire*, 198 F.3d at 919; *United States ex rel. Davis v. Dist. of Columbia*, 679 F.3d 832, 836-837 (D.C. Cir. 2012) (relator's allegation was "based upon" public information even though it was "more specific than what was in the

[government] Auditor's report"); *United States ex rel. Cooper & Assocs. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 235 n.10 (D.D.C. 2006) (the "jurisdictional bar precludes suits by individuals who base *any part of their allegations* on publicly disclosed information" (internal quotation marks omitted)).[5]  The jurisdictional bar thus does not require that relator's list of the attributes of Chinese-origin pencils mirror the ITC's list.  *See Springfield Terminal*, 14 F.3d at 654 ("To require that the evidence and information possessed by the United States be a mirror image of that in the hands of the *qui tam* plaintiff would virtually eliminate the [public-disclosure] bar.").[6]

Finally, relator argues (Br. 21) that the ITC reports are not public disclosures because they do not name the defendants or the specific shipments at issue.  That argument would fail even if it were true, because the public-disclosure bar does not

---

[5]     Relator also argues (Br. 33) that his private investigation yielded information not found in the ITC Reports.  But he later acknowledges (*id.*) that this information "had nothing to do with the quality of Chinese pencils," which is the subject that is relevant to the public-disclosure bar.

[6]     Relator asserts (Br. 27) that pencil bonding, mentioned in his complaint but not in the ITC reports, is "the easiest and most certain way to identify low-end Chinese pencils."  He cites nothing to support that claim.  Moreover, other than claiming that this type of bonding is "rarely" found in pencils manufactured outside China, J.A. 41 (¶ 20), he did not make this argument below.  Relator also maintains (Br. 27-28) that the ITC reports are inconsistent with the complaint as to wood color.  That is incorrect.  Relator alleged that some Chinese pencils are "air dr[ied]," which "results in a light, *natural color* slat and pencil."  J.A. 41 (¶ 20) (emphasis added).  The 2005 ITC Report similarly states that low-end Chinese pencils "use the *original color* of the wood with no lacquer or use low-end paint."  J.A. 216 (emphasis added).

require that the actual transaction or allegation of fraud—"Z [the fraud]"—be publicly disclosed.  It is satisfied if the "material elements of the fraudulent transaction"—"X [the misrepresented facts]" and "Y [the true facts]"—are in the public domain.  *Findley*, 105 F.3d at 687.  Here, both the allegedly misrepresented facts and the allegedly true facts have been publicly disclosed in a way specific to defendants.  First, the shipping manifests, which relator concedes are public disclosures (Br. 18-19), supposedly show that defendants misrepresented the country of origin of the pencils.  Second, according the complaint, the physical characteristics of the pencils that defendants imported necessarily reveal the allegedly true fact that the pencils were manufactured in China.

In any event, the ITC reports *do* refer specifically to defendants.  The 2005 report, for example, states that nationwide catalogue wholesalers or office supply superstores are increasingly the purchasers of imported pencils, and specifically names two defendants (Staples and Target), as an alleged "channel[] of distribution" by which pencils imported from China "reached the market."  J.A. 204.  That same report also links defendants, by name, with the importation of pencils from China.  As to Staples, the report states:

> The report for the original investigation indicated that the office supply market was undergoing significant changes as smaller regional distributors were increasingly supplanted by nationwide catalogue wholesalers or by office supply superstore chains such as Staples…. [I]t appears that the large purchasers are directly importing cased pencils from China, rather than purchasing from an importer.

- 21 -

J.A. 204 n.27.  As to Target and OfficeMax, the same report states that "[d]uring

the original investigation, the Commission identified 27 U.S. importers of cased

pencils from China ….  In their response to the Commission's notice of institution

in this review, the domestic interested parties identified 12 possible U.S. importers

of the subject merchandise from China."  J.A. 208.  And a footnote at the end of

this quoted language states:  "They are … Target, … Office Max, … and [others]."

*Id.* at n.40.

These explicit references allow no reasonable argument that the reports

failed to put the government on notice of the essence of relator's allegations.

Indeed, in *Findley* this Court held that the public-disclosure bar applied simply

because the defendants were "easily identifiable federal employee organizations."

105 F.3d at 687 (citing *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 572

(10th Cir. 1995)).  Here, defendants are "easily identifiable" from the ITC reports;

indeed, they are *expressly* identified, either by name or description.[7]

---

[7]      This point also distinguishes this case from *United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 868 (7th Cir. 2011), *cited in* Appellant's Br. 21.  The court in *Baltazar* held that a report detailing widespread Medicare and Medicaid fraud by numerous chiropractors did not bar the relator's claims because the particular chiropractor defendant was not easily identifiable as having submitted false claims. *Id.*  No such difficulty would be present as to defendants, given their specific identification in the ITC reports, not to mention their size and prominence in the relevant market.

In sum, relator's challenges to the sufficiency of the disclosures in the ITC reports lack merit.  As this Court recently explained, the "substantially similar" standard for invocation of the public-disclosure bar "prevents suits … when the government already has enough information 'to investigate the case and to make a decision whether to prosecute' or where the information 'could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.' " *Davis*, 679 F.3d at 836 (quoting *Springfield Terminal*, 14 F.3d at 654).[8]  Although relator quibbles about details of the ITC reports, he cannot dispute either that many of the allegedly telltale characteristics of Chinese pencils listed in the complaint are also described in the reports, or that defendants were specifically linked therein with importation of pencils from China.  Combined with allegedly misrepresented facts ("X"), which concededly were publicly disclosed, the reports manifestly sufficed to "alert[] law-enforcement authorities to the likelihood of wrongdoing." *Id.*

---

[8]     Relator suggests (Br. 32-33) that *Davis* changed the law regarding public disclosure in a way relevant to his claims.  That is not correct.  The Court in *Davis* explained that in light of the Supreme Court's decision in *Rockwell International Corp. v. United States*, "we will no longer require that a relator provide information to the government prior to any public disclosure of allegations substantially similar to the relator's [as *Findley* required] and will instead enforce only the text's deadline of before filing an action."  679 F.3d at 838-839 (internal quotation marks omitted).  The flaw with relator's original-source claim here (besides being waived) is not when he provided information to the government, but rather that he does not have direct and independent knowledge of that information.  *Davis* made no change as to that statutory requirement.

### 2.   The pencils' characteristics were disclosed in newspaper advertisements, on websites, and on store shelves

While the foregoing amply supports the district court's public disclosure ruling, there is more:  Relator told the district court that Chinese-origin pencils could be definitively identified by a "simple visual examination."  Dkt. 64, at 14. As the court correctly observed, that meant the allegedly true facts were also disclosed where the pencils could be visually examined, namely in newspaper advertisements, on defendants' websites, and (though not required to find public disclosure) on store shelves.  J.A. 192.

First, defendants' newspaper advertisements reveal the visual characteristics of the pencils.  *See, e.g.*, J.A. 135-140.  And such ads are "news media" for public-disclosure purposes.  *See United States ex rel. Ondis v. City of Woonsocket*, 582 F. Supp. 2d 212, 217 (D.R.I. 2008); *United States ex rel. Osheroff v. Humana, Inc.*, No. 10-cv-24486, 2012 WL 4479072, at *6 (S.D. Fla. Sept. 28, 2012) ("A person who picks up a copy of [the *Miami Herald*] has just as much access to the advertisements as the edited content." (alteration in original)); *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 519 (N.D. Tex. 2012).  That is be-cause "the statute … does not require that the information appear in any particular form or section of a newspaper."  *Ondis*, 582 F. Supp. 2d at 217.

Second, the pencils' characteristics were visible on defendants' websites. Following the Supreme Court's guidance to give the statutory sources of public

disclosures a "broad scope," *Schindler Elevator*, 131 S. Ct. at 1891, "courts that have considered the issue have construed the term ['news media'] to include readily accessible websites," *United States ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012) (collecting cases).  The characteristics of the pencils were publicly visible to millions of website visitors.

Relator protests that "it is impossible to discern the quality of the pencils or even suggest that those pencils originate in China from the pictures in print and internet advertising."  Appellant's Br. 13; *see also id.* at 31.  That is a transparent effort by relator—one of many in his brief—to run away from his own complaint. Relator chose to allege repeatedly that "Chinese pencils can be readily identified by their overall appearance."  J.A. 41 (¶ 20); *accord* J.A. 41, 43 (¶¶ 19, 21); *compare* Appellant's Br. 29 ("Relator did not make the claim that the charac-teristics of the pencils proved that they were of Chinese origin.").  And he represented to the district court that a "*simple visual examination* of the product would show certain well known unique features common to pencils manufactured in China, and distinct from pencils manufactured elsewhere."  Dkt. 64 at 14 (emphasis added).  The defendants' advertisements and websites allow for a "simple visual examination," and they display "well known unique features" that relator identifies in his complaint, including wood color, erasers, and ferrules.

- 25 -

Relator also argues that the advertisements and websites "do[] not state the country of origin of those pencils."  Appellant's Br. 14; *see also id.* at 31-32.  He contends, in other words, that the ads and websites do not constitute public disclosures because even if they disclose the true country of origin (i.e., "Y") by showing the pencils' characteristics, they do not *also* include any sort of allegedly false claim that the pencils originate somewhere other than China (i.e., "X").  That argument fails because "[the] fact that the information [about X and Y] comes from different sources is irrelevant.  All that is required is that public disclosures put the government on notice to the possibility of fraud."  *Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004).  X and Y will frequently appear in the different public disclosures; indeed, the *Springfield Terminal* Court fairly assumed that X and Y would surface separately.  *See* 14 F.3d at 654-655.

Finally, although the pencils were at all times available to the public and the government on store shelves (undercutting the notion that relator added value by "unearthing" this entirely public fact), this Court need not decide whether the presence of pencils on store shelves constitutes a further public disclosure.  The other sources cited by the district court—the ITC reports, defendants' print ads, and their websites—amply constitute public disclosures of the allegedly "well known unique features common to pencils manufactured in China, and distinct from pencils manufactured elsewhere."  Dkt. 64 at 14.  The district court simply

made the commonsense observation that defendants could not possibly have kept

from the public the characteristics that allegedly identified these as Chinese made,

because millions of strangers to the alleged fraud see what relator calls the "overall

appearance and quality" of the pencils every day on public store shelves.[9]

### D.      The Original-Source Exception Cannot Help Relator

Because both the allegedly misrepresented facts and allegedly true facts

were publicly disclosed, the district court lacked jurisdiction over relator's claim

unless he could demonstrate that he is an "original source" of the information.  31

U.S.C. § 3730(e)(4)(A).  An original source "has direct and independent

knowledge of the information on which the allegations are based and has

voluntarily provided that information to the government before filing an action."

*Id.* § 3730(e)(4)(B).  Relator made no effort below to show he is an original source,

and thus waived any argument that he is.  In any event, his arguments here (and the

evidence in the record) do not support his belated contention.

### 1.      Relator has waived the argument that he is an original source

Relator states (Br. 32) that he "had the firm conviction" that he would

prevail below on the core public-disclosure argument, and thus he "did not attempt

---

[9]      Indeed, relator's own allegations rely on observations of pencils on a
defendant's store shelves.  *See* Am. Compl ¶ 34 ("The fact that these pencils were
purchased from Pelinda can be determined by the product numbers which are
identical to the product numbers *on boxes of pencils currently sold in Staples'
retail stores* and which are labeled 'Made in Indonesia.' " (emphasis added)).

to make a serious argument that he was an original source." That concession

disposes of the original-source issue: By not arguing below that he is an original

source, he has waived such arguments and cannot raise them here. *See, e.g.*,

*Walpin v. Corp. for Nat'l & Cmty. Servs.*, 630 F.3d 184, 188 n.2 (D.C. Cir. 2011)

("Walpin did not argue below that he is entitled to a declaratory judgment …, and

has therefore waived the argument."); *Murthy v. Vilsack*, 609 F.3d 460, 465 (D.C.

Cir. 2010) ("[I]ssues not raised before judgment in the district court are usually

considered to have been waived on appeal."). There is no reason to excuse the

waiver here, given that it was deliberate rather than inadvertent.

Relator did assert in opposing dismissal below that he "very likely … could

show that he was the source or a source of the publicly disclosed information."

Dkt. 46 at 17. But such an offer is insufficient. *See United States ex rel. Williams*

*v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (discussing

*Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295 (D.C. Cir. 1993)). "[F]ailure to

assert sufficient jurisdictional facts in a timely fashion means that [a relator] cannot

satisfy the requirements of 31 U.S.C. § 3730(e)(4)(B)." *Settlemire*, 198 F.3d at

920. There is no reason relator could not have made this argument below. It is too

late now.

*Settlemire* makes this abundantly clear. The relator there, as here, expected

that the district court would not find the allegations publicly disclosed and thus did

not attempt to show he was an original source.  *See* 198 F.3d at 920.  On appeal, this Court precluded the relator from claiming original-source status.  "It was completely proper," this Court stated, "for [the relator] to assert below that the jurisdictional bar did not apply because, in his view, the public disclosures did not fall" within the FCA.  *Id.*  "Upon losing on this ground however, [relator] does not have a right to recast his claim on appeal so as to avoid the consequences of that decision."  *Id.*  The same is true here.

The Court should also reject relator's plea (Br. 35) to remand the case to "permit him a full opportunity to establish that he is an original source."  Relator *had* a "full opportunity."  He simply decided to forgo it.  He is not entitled to burden defendants and the courts with such a piecemeal-litigation approach that results in multiple appeals.

### 2. The record does not establish that relator is an original source

Waiver aside, the record affirmatively refutes relator's claim that he is an original source.

"To establish original source status …, a *qui tam* plaintiff must allege *specific facts*—as opposed to mere conclusions—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof."  *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th

Cir. 1999) (emphasis added).  Relator's evidence here is far from specific.  He submitted a declaration (signed "John Doe") that vaguely refers to his "business dealings throughout Asia[,]" "several decades of experience," and unspecified "public and non-public trade data."  J.A. 76, 78.  Relator claims he learned of the relevant information through "widespread discussion at trade shows," by talking with unnamed "industry sources within and outside those countries" where the suppliers operated, and by hiring unnamed "investigators" to review suppliers identified by unnamed "sources within the industry."  J.A. 78.  Relator also relies on an unidentified "legal counsel in Asia" and unnamed "counsel working for the industry."  J.A. 77, 78.  Such vague assertions are insufficient to meet relator's burden—particularly from a relator who is proceeding anonymously, a fact that also precludes a finding that he is an original source.  *See generally United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 322 (D. Mass. 2009) ("While within this undifferentiated mass of 'John Does' there may well be someone who might lay claim to being an original source, anonymous broadside pleading is not acceptable for qui tam purposes.").

Even if relator had provided more detail on the individuals and data on which he relied, he would not be an original source.  Relator states that he discovered the alleged fraud by hiring investigators and talking with industry insiders.  Appellant's Br. 7; J.A. 77-78.  That is not "direct and independent"

knowledge, 31 U.S.C. § 3730(e)(4)(B), because it is not "first-hand knowledge," *Findley*, 105 F.3d at 690; *see also United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003) ("A relator has direct knowledge when he sees it with his own eyes."); *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538, 1547 (10th Cir. 1996) ("[I]ndependent knowledge is knowledge which is not secondhand knowledge.").  Put simply, relator does not claim he himself saw the fraud, or evidence of it; he claims only that he heard about it from others, including some sources he hired.  That is inconsistent with the notion that he is an original source.

The First Circuit rejected a similar claim earlier this year.  In *United States ex rel. Estate of Cunningham v. Millennium Laboratories of California*, 713 F.3d 662 (1st Cir. 2013), the court held that a relator was not an original source where he claimed for the first time on appeal that he had gained knowledge of the relevant facts by his own "independent investigation into [the defendant]'s activities," an investigation that included "speaking to a number of people about [the defendant]'s practices," and  review of  "interviews with lead industry personnel," *id.* at 673-674.  Such arguments, the court stated, "fail[] to show how the knowledge [relator] obtained was 'direct.' "  *Id.* at 674.  The same is true here.[10]

---

[10]     The First Circuit also held that "because Relator never raised his original source argument before the district court, it is waived."  713 F.3d at 674.  As discussed above, a waiver should likewise be found here.

Nor is relator an original source because he claims to have provided "detail[s]" supposedly "far more extensive than and different from that contained in the ITC Reports." Appellant's Br. 33. As an initial matter, a relator is not an original source "simply because he conducted some collateral research and had background knowledge that allowed him to understand the significance of publicly disclosed information." *United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292, 300 (D.D.C. 1996). Moreover, relator's argument confuses public-disclosure and original source. Having *more* information than appears in a particular public source does not show that one is an original source; it is entirely possible that any such supplemental details were acquired in a way that does not qualify as "direct and independent" (such as talking to others with direct and independent knowledge). Indeed, that is evidently the case with relator's allegedly additional information here. What matters is whether the relator himself had a direct and independent basis for the *same* information that appears in the public source. As discussed, the complaint shows that relator here did not.

*    *    *

Relator failed to meet his burden of establishing jurisdiction; his allegations were publicly disclosed and he has not shown that he is an original source. The district court properly dismissed his complaint.

## II.     THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

This Court may "may affirm the dismissal of a complaint on different

grounds than those relied upon by the district court," *Amgen, Inc. v. Smith*, 357

F.3d 103, 111 (D.C. Cir. 2004), so long as the alternate ground was "properly

raised" in the district court, *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009).

Here, defendants argued below that even if the public-disclosure bar did not apply,

the complaint would have to be dismissed for several independent reasons.  One of

those is that relator's allegations fail—in at least two independent ways—to state a

plausible claim for relief.

The complaint alleges in conclusory terms that "Defendants knowingly

purchased Chinese-made pencils" and "falsely declared on Customs entry

documents that the country of origin was a country other than China."  J.A. 38

(¶ 12).  But relator does not plausibly allege that anyone associated with

defendants *knowingly* misrepresented the pencils' country of origin, as the FCA

requires.  Indeed, he does not even plead facts plausibly supporting the conclusion

that any alleged representations by defendants were false.  Rather, he merely

alleges that the pencils imported by defendants have qualities in common with

certain Chinese pencils, while failing to allege that the characteristics of the pencils

defendants imported could *not* be found in pencils manufactured outside China—

i.e., failing to exclude the entirely plausible hypothesis that any representations

- 33 -

defendants made were true because their pencils were in fact manufactured outside China.  Under the Supreme Court's and this Court's precedent, that is insufficient.[11]

### A.    Relator Fails To Plausibly Allege That Defendants Had The Requisite Scienter

1.    To establish scienter under the FCA, a relator must show that a defendant "knowingly" concealed an obligation to the government.  31 U.S.C. § 3729(a)(7).  "Knowingly" for these purposes means with " 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard' of the truth or falsity of information in the defendant's claim."  *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010) (*SAIC*).  Some FCA relators seek to prove that a corporate defendant had the required knowledge via a theory of "collective knowledge."  That theory requires "piecing together scraps of 'innocent' know-

---

[11]    Relator refers (Br. 7-8 & n.3) to prior disclosures to the government made by Target and OfficeMax pursuant to 19 U.S.C. § 1592(c)(4) (2008), but he immediately (and correctly) acknowledges that "they are not relevant to … this appeal."  In fact, the disclosures are not mentioned in the complaint and thus are not properly before this Court on defendants' Rule 12(b)(6), 8(a), and 9(b) arguments.  *See* Target Corp.'s Motion to Strike, Dkt. 73, 73-1.  Even if the disclosures could be considered, they undermine relator's fraud allegations.  For example, OfficeMax's disclosure shows that OfficeMax relied on certificates of origin from its suppliers, disproving scienter.  *See* Dkt. 45-2, 45-3 (filed under seal).  And Target disclosed that it had conducted its own investigation and determined that five suppliers—none of which is identified in the complaint—may have supplied pencils originating in China without accurately disclosing their origin to Target.  *Compare* Dkt. 65-3, 65-4 *with* Compl., ¶¶ 42-50, J.A. 54-56.  Finally, the prior disclosures obviously have no bearing on Staples or Industries for the Blind.

- 34 -

ledge held by various corporate officials, even if those officials never had contact with each other or knew what others were doing in connection with a claim seeking government funds." *Id.* at 1275.

This Court has squarely held, however, that the "collective knowledge" theory is an unacceptable means of demonstrating scienter in FCA cases. *See SAIC*, 626 F.3d at 1277. The Court explained that collective knowledge is "an inappropriate basis for proof of [FCA] scienter because it effectively imposes liability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose." *Id.* at 1274; *see also Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 670 n.6 (D.C. Cir. 1996) ("Individual acts of negligence on the part of employees—without more—cannot … be combined to create a wrongful corporate intent.").

Here, relator did not allege that *any* individual associated with *any* defendant made *any* statement about country of origin knowing it to be false or with any reason to know it was false. Instead, he candidly acknowledged below that his complaint rests on a theory of collective knowledge, arguing in opposition to a motion to dismiss that "in a case involving false claims to Customs, the submission of a false claim is truly a corporate effort and the individuals engaged in the fraud are irrelevant." Dkt. 46 at 21. That argument is foreclosed by binding Circuit

- 35 -

precedent. To state a plausible claim for relief, relator had to allege that an individual knew both the imported pencils' true country of origin (as defined by Customs law), and (2) that defendants misrepresented the country of origin to Customs. As he has effectively conceded, relator's allegations provide no factual basis to conclude that any individual had this knowledge. This is a sufficient, independent basis to affirm the district court.

  2. Relator's scienter allegations also fail because they both do not follow from his factual allegations (for two reasons) and are affirmatively contradicted by his arguments on appeal.

  *First*, many of the characteristics that, according to the complaint, demonstrate Chinese manufacture pertain to the pencils' paint, ferrules, and erasers. *See* J.A. 41-43 (¶ 20). And the complaint acknowledges that those components are sometimes affixed to the pencils *not* in China but in countries alleged to be listed on Customs documents, e.g., India, Indonesia, and Taiwan. *See* J.A. 45, 53 (¶¶ 28, 40). Hence, the characteristics on which relator relies do not always show Chinese manufacture of the pencils, and thus could not demonstrate that "experienced pencil buyers" would know from looking at the pencils that they originated in China. J.A. 41 (¶ 19).

  *Second*, the raw materials mentioned in the complaint—wood and lead—could have been purchased in China and incorporated during manufacture in a

second country.  That is important because a pencil's country of origin is

determined by the location of its "substantial transformation," not the source of its

raw materials or component parts.  *Target Sportswear, Inc. v. United States*, 875

F. Supp. 835, 842 (Ct. Int'l Trade), *aff'd*, 70 F.3d 604 (Fed. Cir. 1995).  Thus, in

that event, the country of origin would be the second country, not China.  *See id.*

Relator thus did not plead facts that establish or from which one plausibly could

infer knowledge under the FCA on the part of anyone at any defendant regarding

Chinese manufacture of the pencils.

Relator has now put yet another nail in this coffin with the arguments he

makes on appeal (in a vain effort to escape the public-disclosure bar).  As noted,

the complaint sought to allege scienter by claiming that "[d]ue to the differences in

price and the physical characteristics of Chinese-made pencils and pencils made in

the rest of the world, experienced pencil buyers working for Defendants are put on

notice of the true country of origin of the pencils they purchase."  J.A. 41 (¶ 19).

Relator fatally undermines this claim by stating now (Br. 12) that the pencils'

Chinese origin could *not* have been discerned from their characteristics, that those

characteristics merely "suggest[]" that a pencil "may" have originated in China,

and that the alleged fraud could only have been discovered through "a paid

investigation of the foreign factory [and] industry informants," Br. 18; *see also,*

*e.g.*, Br. 2 (defendants' pencils merely "resembled" Chinese-made pencils).  If, as

relator now concedes (Br. 12), the pencils' appearance "does not disclose that they originate in China," then an "experienced pencil buyer" would be unable to tell the pencils are of Chinese origin based on visual inspection and would have lacked the requisite scienter.[12]

For all the reasons just given, there is also no merit to relator's new suggestion on appeal (Br. 12) that defendants "acted in reckless disregard of the origin of their pencil importations."  Relator's complaint contains no such averment, but even accepting all of relator's allegations—and certainly if one credits his newly adopted appellate positions—experienced pencil buyers would have had ample grounds to believe that defendants' pencils were in fact from the countries that defendants allegedly stated.  That precludes a finding of reckless disregard, which requires the pertinent actor to ignore a high likelihood of a certain circumstance (here, Chinese manufacture) being true.  *Cf. United States ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*, 298 F. Supp. 2d 91, 101 (D.D.C. 2004) ("The severity of conduct required to constitute 'reckless disregard'

---

[12]     Even if an experienced pencil buyer had realized that the pencils were from China, that could support a finding of scienter only if he also knew that the Customs documents claimed the pencils were from a country other than China.  As explained, relator makes no allegations supporting the claim that any individual possessed both of these pieces of information, instead relying on the discredited "collective knowledge" theory.

underscores that innocent mistakes, mere negligence, [and] even gross negligence (without more) are not actionable under the False Claims Act.").[13]

### B.    The Complaint Does Not Allege Facts That Plausibly Support The Conclusion That Defendants' Pencils Were Manufactured In China

Dismissal of the complaint should also be affirmed because it lacks the factual allegations necessary to support a plausible inference that defendants' alleged country-of-origin statements were false.  The central argument of the complaint is that the pencils imported by defendants must have been made in China given their characteristics.  As relator now concedes, however (though it was already clear, as defendants argued below), the complaint does not state that *only* Chinese-made pencils have these characteristics.  And if pencils made in other countries have the same characteristics, then the characteristics of defendants' pencils at most makes it possible they were of Chinese origin.  Relator's allegations about those characteristics, in other words, are equally consistent with

---

[13]    The lack of any basis for finding knowledge or reckless disregard is why this case is unlike those relator cited below.  For example, in *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997), the court affirmed a factual finding that a psychiatrist and his spouse acted with reckless disregard in submitting claims to the government where:  (1) the spouse made no effort to determine how much time her husband had actually spent with any client, (2) her husband did not review any bills submitted on his behalf, and, (3) "[m]ost tellingly, there were a number of days … when even the shoddiest recordkeeping would have revealed that false submissions were being made—those days on which the Krizeks' billing approached twenty-four hours in a single day."  *Id*.  No remotely similar indicia of reckless disregard have been alleged here.

the conclusion that defendants' pencils were made outside of China—and specifically in the countries allegedly represented to the government.

This dooms the complaint. It is not enough that factual allegations make an inference of liability "conceivable" or "possibl[e]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009). Nor is it enough that allegations be "consistent with" such an inference; they must do more in order to demonstrate that the inference is "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007). This Court has made the same point, stating that "allegations that a defendant acted in ways consistent with [liability], but also equally well explained by legitimate [reasons], do not … show illegality." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer US LLP*, 682 F.3d 1043, 1051-1052 (D.C. Cir. 2012) (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 680 (courts must consider whether factual allegations, even if consistent with nefarious acts, might also be "compatible with" lawful behavior). Under these standards, relator has not stated a viable claim.

Relator's allegations about the characteristics of the pencils that defendants imported are sparse. He generally avers that the imported pencils had "Chinese" characteristics. *E.g.*, J.A. 46 (¶ 32). He acknowledges, however, that some of the characteristics that supposedly indicate Chinese manufacture, such as paint, ferrules, and erasers, are sometimes added in the country producing the pencils. J.A. 45 (¶ 28). Further, the raw materials of the pencils—the wood and lead—

could be purchased from Chinese sources and be incorporated during manufacture in a second country. Thus, pencils made outside China *can* have characteristics in common with or identical to Chinese pencils, which makes a non-Chinese country of origin equally plausible.

Moreover, the complaint does not state whether or how pencils that are manufactured in China differ from those manufactured in other Asian countries. Thus, relator's conclusory allegations that defendants' pencils appear to have some of the *characteristics* commonly associated with pencils made in China does not support the inference that those pencils were actually *made* in China. At best, relator's factual allegations are " 'merely consistent' " with such a conclusion, and are therefore insufficient under Rule 8. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Remarkably, relator now concedes this point. Faced with the dilemma that the allegations in the complaint run afoul of the public-disclosure bar, relator attempts to disavow them. He abandons the argument he made below that physical characteristics are the tell-tale indication of a Chinese-origin pencil, and instead argues (Br. 12) that these characteristics merely indicate possible Chinese origin. Elaborating, he states that "[f]acts related to quality and price do not in themselves disclose the country of origin." *Id.* Rather, the "fact that a pencil is of substandard quality and similar to low-end Chinese pencils *suggests only* that those pencils *may*

be of Chinese origin." *Id.* (emphases added).  Relator also admits it is "possible that factories in Taiwan, Indonesia and Vietnam"—where defendants allegedly claimed pencils at issue originated, *see* J.A. 50, 53, 56, 57 (¶¶ 34-35, 40, 50, 52, 55)—make pencils with the same characteristics as Chinese-origin pencils. Appellant's Br. 12.  Accordingly, relator's core allegation below that the pencils sold by defendants "have the physical characteristics of pencils made in China," J.A. 57 (¶ 54), is now acknowledged on appeal to be merely *consistent* with liability.  Relator's new position on appeal (though improper) underscores what was clear all along:  The complaint fails to state a claim for relief because relator alleges facts that are "merely consistent" with the conclusion that the pencils were actually produced in China.  *See Iqbal*, 556 U.S. at 678; *see also RSM Prod. Corp*, 682 F.3d at 1051-1052.  Dismissal therefore should be affirmed.[14]

Nor does it salvage relator's claims (Br. 11) that his investigation—which is never even mentioned in the complaint—allegedly revealed that defendants' Asian

---

[14]      Relator's claim is not made plausible by his allegations, *see* Am. Compl. ¶ 19, 21, that Chinese-made pencils sell for lower prices than pencils manufactured in third countries, and that the lower prices put defendants on notice of the pencils' origin.  First, as with their physical characteristics, relator now concedes (Br. 12) that price merely suggests Chinese origin.  The price allegations are thus "merely consistent" with the conclusion that the pencils were actually produced in China. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Second, relator only alleges that in general Chinese-made pencils sell for less than pencils manufactured in third countries.  He does not allege the price of any pencil shipment in the complaint, that any pencils referred to in the complaint were Chinese-made based on price, or that the price of any shipment put any defendant on notice that those pencils were produced in China.

suppliers "did not or do not have the capability of producing pencils." Even if a particular manufacturer lacked sufficient manufacturing capacity to produce all pencils sold to a particular defendant, this does not mean that the difference was necessarily made up by Chinese pencils, as relator would have it. J.A. 55 (¶¶ 48-49). It is equally plausible that any shortfall was met by pencils made in a country other than China, such as in a different factory in the claimed country of origin.[15]

For example, relator alleges that pencils purchased by Target from Lucky Star Enterprise & Co. could not have been produced in Taiwan (as allegedly claimed) because Lucky Star "has no manufacturing facilities in Taiwan." Am. Compl. ¶ 48, J.A. 55. But entirely lacking is any allegation supporting the inference that the pencils sold by Lucky Star were produced in China (as opposed to another facility in Taiwan, for example), other than the characteristics of the pencils that relator now concedes (Br. 12) do not actually prove Chinese origin. These types of allegations are insufficient to state a claim under Rule 8(a). *See Twombly*, 550 U.S. at 556, 570.

Relator's allegations regarding Staples fail for the same reason. He alleges, for example, that Staples purchased most of its pencils from Indonesia supplier PT

---

[15]    Relator attempts to cover this critical failure by repeatedly eliding the key distinction between various suppliers' shipments to the United States and their shipments to *defendants*. *See, e.g.*, Appellant's Br. 2 ("not capable of producing the pencils they were shipping to the United States"), 10 ("shipped to the United States"), 12, 18 ("U.S. buyers"; "sell to the United States"), 21.

Pelinda, and that Pelinda manufactures "roughly 50 percent of its finished graphite pencils in Indonesia," while importing the rest from China.  J.A. 44-45 (¶ 25).  But relator does not allege that Pelinda manufactured on site an insufficient number of pencils to fulfill Staples' orders with pencils manufactured in Indonesia.  It is thus entirely possible that the pencils Staples purchased are among those that relator concedes are manufactured in Indonesia.  It is likewise plausible that any pencils manufactured off-site were manufactured elsewhere in Indonesia or in a third country other than China.  *See Iqbal*, 556 U.S. at 680 (courts must consider whether factual allegations, even if consistent with nefarious acts, might also be "compatible with," or "more likely explained," by lawful behavior).

A country-of-origin argument similar to relator's here was rejected in *United States ex rel. Folliard v. Hewlett-Packard Co.*, 272 F.R.D. 31 (D.D.C. 2011).  The complaint there alleged that Hewlett-Packard sold to the government products incorrectly identified as originating from a designated country, when in fact the country of origin was China.  Unable to plead "any information as to whether any of these products were, in fact, purchased by the United States," relator "speculate[d] that because at least some of the products with similar item number suffixes are 'commonly used and purchased,' it is … highly likely that at least some of the products were purchased by the government."  *Id.* at 35-36.  The court dismissed the complaint, finding that there was "nothing to indicate that the

government did, in fact, purchase any of these products from [Hewlett-Packard]." *Id.* at 35.  The complaint here fails in the same way.

In sum, by relator's own admission, a pencil with the characteristics of a Chinese-origin pencil might have been:  (a) produced in China; (b) produced outside China; or (c) substantially transformed outside China.  Relator's allegations, as recast on appeal, are thus "merely consistent" with liability and do not render his claim of fraud plausible.  *See Iqbal*, 556 U.S. at 678.

## III.  THE COMPLAINT DOES NOT PLEAD FRAUD WITH PARTICULARITY

The district court's judgment can also be affirmed on the ground that the complaint fails to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).

"[B]ecause the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)."  *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-552 (D.C. Cir. 2002).  Under that rule "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "While a complaint that covers a multi-year period may not be required by Rule 9(b) to contain a detailed allegation of all facts supporting each and every instance of submission of a false claim, some information on the *false claims* must be included."  *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 35 (D.D.C. 2003) (emphasis added).

- 45 -

More specifically, pleading fraud "with particularity" requires "stat[ing] the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Williams*, 389 F.3d at 1256. In other words, a relator must allege the " 'who, what, when, where, and how' " of the fraud. *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 8 (D.D.C. 2010) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Relator has not done so here.[16]

### A.     The Complaint Fails To Specify The Contents Of The Allegedly False Statements

Even though alleged false statements in Customs entry forms are the heart of the complaint, relator fails to allege specifically the contents of even one such statement. Instead, he states in conclusory terms that the defendants falsely claimed that their pencils' countries of origin were not China, *see* J.A. 43-44, and he depends on publicly available PIERS-data for the statements' contents, *see* J.A. 46-49, 51-58. The PIERS data, however, identifies a shipment's foreign departure port, *not* the country where the shipment's contents originated. That difference is crucial, because the port from which a *ship* departed can certainly be different from the *pencils'* country of origin. The departure port of a ship loaded in Indonesia or

---

[16]     Relator also frequently alleges "on information and belief," *e.g.*, J.A. 50, 57, a manner of pleading that is generally insufficient in fraud cases, *see United States ex rel. Clausen v. Lab. Corp.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citing *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988)).

Taiwan, for example, will always be Indonesia or Taiwan, but that ship may carry goods that originated in many other countries. A declaration regarding where a ship departed proves nothing about the claimed country of origin for the pencils on board. *See* U.S. Customs and Border Protection, CBP Form 7501 Instructions at 5, 10, *available at* http://forms.cbp.gov/pdf/7501_instructions.pdf (describing "country of origin" and "foreign port of lading" as separate elements with distinct definitions) (last visited Oct. 28, 2013).

Here, allegations about the defendants' claimed countries of origin for each shipment are wholly absent from the complaint. That is critical information, and surely required by Rule 9(b). Its omission warrants dismissal of the complaint. *See Folliard*, 272 F.R.D. at 35 (dismissing complaint that failed to identify "details about the content of the claims"); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("It seems … a fairly obvious notion that a False Claims Act suit ought to require a false claim[.]").

## B.  The Complaint Does Not Specify Who Made The Allegedly False Statements Or Otherwise Engaged In The Alleged Fraud

A relator must "identify individuals allegedly involved in the fraud." *Williams*, 389 F.3d at 1256; *see also United States ex rel. Davis v. Dist. of Columbia*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008). The complaint here does not meet this requirement. It alleges that defendants "falsely declared on Customs entry documents that [their pencils'] country of origin was a country other than

China." J.A. 38 (¶ 12). But it is fatally silent about *who* submitted these forms, and to whom they were submitted.

Indeed, relator fails even to specify the companies that submitted the forms regarding defendants' pencil shipments. He alleges only that two identified companies shipped the pencils, and that one also acted as "consignee." J.A. 50, 57 (¶¶ 33-36, 55). That is insufficient; Rule 9(b) requires a relator to "identify with specificity who precisely was involved in the fraudulent activity." *Williams*, 389 F.3d at 1257 (dismissing complaint that "repeatedly refers generally to 'management' and provides a long list of names without ever explaining the role these individuals played in the alleged fraud"); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (holding complaint properly dismissed for failure to satisfy Rule 9(b) where relator did not specify "which members" of a senator's staff allegedly made false statements). Because the complaint does not do so, its dismissal was proper.

### C.    The Complaint Fails To Specify When, Where, Or How The Allegedly False Statements Were Made

Relator's complaint presents no "particularity" about when the alleged fraud was committed, where it was committed, or how. Supplying "partial list[s]" of manifest information is insufficient (*e.g.*, J.A. 46), especially given that relator fails to allege, as to even a single manifest—much less as to any Customs entry form— when, where, or how it was composed or submitted. Indeed, relator's complaint

consists of little more than a list, lifted directly from the PIERS database, purportedly showing defendants' shipping manifests for pencil imports. That does not provide the requisite detail. *See Folliard*, 272 F.R.D. at 35 ("[Relator's] complaint consists of little more than a list of 38 [Hewlett-Packard] products available for sale on the NASA SEWP website that mistakenly identify the country of origin."); *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc.*, 778 F. Supp. 2d 37, 53 (D.D.C. 2011) (dismissing complaint that failed to "specify any representative claims from among … 'tens of thousands' ").

These multiple independent failures to comply with Rule 9(b) provide another distinct basis to affirm dismissal of the entire complaint.

## IV.   COUNTS II AND IV ARE NOT VIABLE FOR ADDITIONAL REASONS

Relator voluntarily dismissed Count III of the complaint, leaving three counts. *See* J.A. 186. As an alternative to the multiple grounds for affirmance identified above, the dismissal of Counts II and IV can be affirmed for failure to state a claim.

### A.   Count II Fails To State A Claim

Count II alleges that defendants are liable under the FCA's reverse-claims provision because they "avoided and concealed their obligation" to pay a marking duty. J.A. 59 (¶ 59). This "obligation" is predicated on 19 U.S.C. § 1304(i) (2008). *See* J.A. 59 (¶ 59). That section imposes an additional, remedial duty of ten percent ad valorem on mismarked goods.

This Court and others have held that such "an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim."  *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *accord United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004); *Am. Textile Mfrs. Inst. v. The Limited, Inc.*, 190 F.3d 729, 741 (6th Cir. 1999); *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997). The Sixth Circuit's decision in *American Textile* is particularly apposite.  The relator there made claims virtually identical to those here, even basing his reverse-false-claims allegations on section 1304(i).  *See* 190 F.3d at 732.[17]  The court rejected the claim because "a plaintiff may not state a reverse false claim unless the pertinent obligation attached *before* the defendant made or used the false record or statement."  *Id.* at 742.

In short, section 1304(i) creates at most a contingent obligation.  That does not support an FCA claim.  Count II is thus legally inadequate.

### B.     Count IV Fails To State A Claim

Count IV alleges that defendants declared that Chinese-origin pencils "originate[d] in certain countries that are eligible for duty-free treatment," thereby

---

[17]     *American Textile* referred to section 1304(h) rather than (i) because at the time the ten percent duty appeared in subsection (h).  It was moved to subsection (i) soon thereafter.  *See* Miscellaneous Trade and Technical Corrections Act, Pub. L. No. 106-36, tit. II, subtit. B, § 2423(a), (b), 113 Stat. 180 (1999).

avoiding an "obligation to pay regular Customs duties of 14¢ per gross plus 4.3 percent on those pencils." J.A. 60 (¶ 63).

Relator identifies two such countries in his complaint: Indonesia and Thailand. J.A. 40 (¶ 16). Relator does not allege, however, that Industries for the Blind, OfficeMax, Target, or SmileMakers ever submitted any claims to the government stating that any pencil it bought originated in Indonesia or Thailand. *See* J.A. 53, 55-58 (¶¶ 41, 49, 51-55). When confronted below with this pleading failure, relator responded that "*if* any of the Defendants declared that Chinese-made pencils originated in countries that are eligible for duty-free treatment," then "they submitted false claims to avoid regular duties of 14¢ per gross plus 4.3 percent." Dkt. 46 at 26 (emphasis added). He further argued that whether defendants are "libel [sic] for submitting false claims to avoid regular duties will be determined at the end of discovery." *Id.*

That is not how pleading works. "Fundamental fairness commands that [c]ounsel should not be allowed to file a complaint first and thereafter endeavor to develop a cause of action." *Butera & Andrews v. IBM Corp.,* 456 F. Supp. 2d 104, 114 (D.D.C. 2006) (alteration in original) (internal quotation marks omitted). Because relator has not alleged that three of the defendants (plus Smilemakers) made claims to the government representing that pencils were imported from Indonesia or Thailand, Count IV is not viable as to those defendants. *See Williams*,

389 F.3d at 1256-1257. And it is not viable as to all of the defendants, including Staples, for the many reasons discussed above.[18]

## V.    DISMISSAL ON ANY ALTERNATE GROUND SHOULD BE WITH PREJUDICE

If the Court affirms the dismissal on any of the alternate grounds presented, it should not permit relator an opportunity to amend the complaint. Relator filed his initial complaint in 2008. He then had nearly four years in which he allegedly conducted his own investigation and also worked with the government on uncovering additional information. Yet his complaint lacked allegations of the most basic and essential facts. If after all that time and effort he still could not produce a viable complaint, there is no reason to conclude that another opportunity would bear fruit. *See Folliard*, 272 F.R.D. at 36 n.7 (dismissing FCA action with prejudice where "[r]elator filed his initial complaint in November 2007, and had over two years to conduct additional discovery and amend the current complaint"). This is particularly true given that the government, following its own "four-year investigation by Customs and ICE," Appellant's Br. 7, chose not to intervene below. *See* J.A. 25-27. Under these circumstances, it is simply too unlikely that the relator could state a viable claim, rendering dismissal with prejudice appropriate. *See Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003

---

[18]    Relator's attempt to maintain this action anonymously is also improper, and should not be allowed in the unlikely event that the case is remanded. *See United States ex rel. McLain v. Fluor Enters., Inc.*, No. 06-11229, 2013 WL 4721367, at *1-2 (E.D. La. Sept. 3, 2013).

(D.C. Cir. 1996) (affirming denial of leave to amend given that plaintiff had "little chance" of succeeding on his claim); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility is a legitimate ground for denying leave to amend), *cited in Atchinson v. Dist. of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996). Any other approach would not only unfairly require defendants to continue litigating a hopeless case, but also burden the courts for several years to come.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

/s/  David W. Ogden

| | |
|---|---|
| STEVE Y. KOH | DAVID W. OGDEN |
| JOHN F. HENAULT, JR. | DANIEL S. VOLCHOK |
| PAUL GRAVES | D. BRADFORD HARDIN, JR. |
| PERKINS COIE LLP | GIDEON M. HART |
| 700 13th Street N.W. | WILMER CUTLER PICKERING |
| Suite 600 | HALE AND DORR LLP |
| Washington, D.C. 20005 | 1875 Pennsylvania Avenue N.W. |
| (202) 654-6200 | Washington, D.C. 20036 |
| *Counsel for OfficeMax, Incorporated* | (202) 663-6000 |
| | *Counsel for Staples, Inc.* |
| | |
| ROBERT P. FLETCHER | JAMES L. VOLLING |
| LESLIE PAUL MACHADO | MATTHEW B. KILBY |
| LECLAIR RYAN | FAEGRE BAKER DANIELS LLP |
| 1101 Connecticut Avenue N.W. | 2200 Wells Fargo Center |
| Suite 600 | 90 South Seventh Street |
| Washington, D.C. 20036 | Minneapolis, MN 55402 |
| (202) 659-4140 | (612) 766-7700 |
| *Counsel for Industries for the Blind, Inc.* | *Counsel for Target Corp.* |

October 28, 2013

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with this Court's July 31, 2013, order in this appeal because, according to the word-count function of the word-processing program in which it was prepared (Microsoft Word), the brief contains 12,873 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) or Circuit Rule 32(a)(2).

/s/  Daniel S. Volchok
DANIEL S. VOLCHOK

## CERTIFICATE OF SERVICE

I certify that on this 28th day of October, 2013, I caused the foregoing brief to be electronically filed with the Court using the appellate CM/ECF system. Under Circuit Rule 25(c), the resulting notice of docket activity constitutes service of the brief on all parties.

I further certify that on this date a paper copy of the foregoing brief was sent via third-party commercial carrier to each of the following:

JOSEPH A. BLACK
THE CULLEN LAW FIRM, PLLC
1101 30th Street N.W., Suite 300
Washington, D.C.  20007
*Counsel for Appellant*

DARRELL C. VALDEZ
OFFICE OF THE U.S. ATTORNEY
Judiciary Center Building
555 Fourth Street N.W.
Washington, D.C.  20530
*Counsel for the United States*

/s/  Daniel S. Volchok
DANIEL S. VOLCHOK